**SO ORDERED.**

**SIGNED this 13 day of July, 2010.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

CASEY LYNN FLEMINGS,  Case No. 09-14733
 Chapter 7
    Debtor;

RICHARD P. JAHN, JR., Trustee,

    Plaintiff,

v.  Adversary Proceeding
 No. 09-1157

CASEY LYNN FLEMINGS,

    Defendant.

**Memorandum**

During the week before filing her bankruptcy petition, the debtor raised money to make needed roof repairs on her heavily mortgaged home by selling the only significant unencumbered asset she owned and borrowing money from her mother. When she filed bankruptcy at the end of that week, she omitted any reference to the payment she made to her mother from her sworn

statement of financial affairs. The trustee contends, first, that the sale, the loan and the payments constituted a pre-petition disposition of assets done with the intent to hinder, delay or defraud her creditors justifying a denial of her discharge under 11 U.S.C. § 727(a)(2)(A). Second, he contends that the omission constituted a false oath made in connection with the case which the debtor made knowingly and fraudulently, also justifying a denial of her discharge under 11 U.S.C. § 727(a)(4)(A). There is little dispute about the facts except for the debtor's intentions in doing what she did. If the court finds that the debtor had the requisite fraudulent intent to support the trustee's claims on either issue, the discharge should be denied.

The court finds that the debtor provided a satisfactory explanation for her last minute disposition of assets that rebuts the trustee's allegation of fraudulent intent toward her creditors generally; however, her explanation for the omission in her statement of financial affairs was not credible in light of the facts of this case and was not sufficient to overcome the trustee's evidence that a false oath was knowingly and fraudulently made by the debtor in connection with her case.[1]

## I.     Facts

The debtor filed her Chapter 7 petition on July 29, 2009. Her schedules reflect that at the time of filing she was employed as the finance manager of Big Red Powersports, Inc. for the preceding 18 months. *Debtor's Exhibit B.* In the schedules filed with her petition, she listed that she owned her home and valued it at $46,250. She reported two debts secured by her home totaling $87,374. At trial she testified that she had reaffirmed both debts despite her attorney's advice. He had advised that she should not retain her home when it was worth so much less than the debt against it. She also owned a 2007 Honda Accord valued at $11,200, subject to a lien securing a

---

[1] The trustee originally alleged additional reasons for objecting to the debtor's discharge based upon his belief that the debtor had made transfers post petition and failed to disclose funds on hand. Upon completion of the proof at trial, the trustee admitted that all of the transfers occurred pre-petition and indicated that he was no longer pursuing an objection to discharge under 11 U.S.C. § 727(a)(2)(B) and, therefore, there were no undisclosed funds remaining at filing.

debt of $13,976.13. She has also reaffirmed that obligation. The debtor listed no priority debts.

She is seeking a discharge of only her unsecured debts totaling $24,777.14. The unsecured debts are comprised primarily of credit card debt. The remaining unsecured debts, representing less than $500 of the total, are medical bills. According to the debtor's schedules there were no assets available for unsecured creditors. According to her sworn statement of financial affairs, there were no payments to creditors in excess of $600.00 in the 90 days before filing and no payments made to insiders in the year before filing. There was one sale of an asset disclosed. That was the sale of a 1967 Camaro for $6000 to Brad Tate. *Trustee's Exhibit 2* at 27.

In the months before the bankruptcy filing, the debtor received notice from her insurance company that her homeowner's insurance would not be renewed if she did not make repairs to her roof. At trial, the debtor testified that if she did not maintain her homeowner's insurance then she would be in default of the loans secured by her home. The deadline to make these repairs was August 7, 2009. The debtor provided pictures of the roof showing the severe need for repairs and correspondence from her insurer regarding cancellation and the requirements for renewal of the insurance. *Debtor's Exhibit* A. She was aware that the house was not worth what was owed against it, but she did not feel that she could abandon the home. Because she had several pets, she did not believe that she would be able to find a place to rent.

In order to fund the roof repairs the debtor decided to sell the Camaro that she had hoped to one day restore. The Camaro was running and had a "350 V8" (according to the description in the internet sales advertisements which the debtor submitted at trial.) *Debtor's Exhibit C* at 4. The debtor testified that the car had a NADA value of $11,0000, but that her efforts to sell the car on the internet had not produced any offers close to $11,000. Unable to find a buyer and needing to get the roofing job started, the debtor borrowed $2500 from her mother on July 23, 2009. Almost immediately thereafter she found a buyer for the Camaro and sold it for $6000 cash on July 27, 2009. There is no evidence that the sale was anything other

than an arm's length transaction with an unrelated third party.

At the first meeting of creditors the trustee asked about what happened to the $6000 Camaro proceeds. The debtor responded that she had used part of the money for roof repairs that were needed in order to maintain the property insurance on her home. *Trustee's Exhibit* 1 at 2. She represented that the roofing contractor was paid some money prior to the bankruptcy filing and some when he finished the job on August 2nd and that the total cost of the job was about $4000. The roofing contractor was a friend of her husband's.

When the trustee inquired further about the roof repairs, the debtor explained that she had borrowed $2500 from her mother to pay for materials to start the job before she sold her car. *Trustee's Exhibit* 1 at 3. The trustee then asked about whether the loan was shown on the petition, and only then did she disclose that the loan had been repaid in full two days before the bankruptcy filing. *Id.* at 3.

At trial, the debtor contended that she had misspoken at her creditors' meeting regarding the payment dates to the roofing contractor. She also provided a schedule of her expenditures on the roof that showed that the contractor was paid cash of $500 five days before her filing, $1000 two days before her filing, and $500 on the day of her filing. The schedule showed that the materials cost $1972.02 and were purchased about five days before her filing with some of the loan proceeds from her mother. *Debtor's Exhibit* I at 1. Two of the payments to the roofing supplier exceeded $600. One was for $947.66 and the other was for $636.27. Both amounts were paid in cash on July 24, 2009. *Id.*

At trial, the debtor and her mother, Mrs. Wanda Flemings, testified about the loan for $2500 which was made on July 23, 2009. Mrs. Flemings testified that she provided the money to her daughter whom she described as "desperate" to have the roof repaired. At the time the loan was made there was no buyer for the car, but Mrs. Flemings knew that her daughter was trying to sell the car and that her daughter would repay her when she could.

When the car sold on July 27, 2009, the debtor did repay her mother in cash that same day. Two days later the debtor prepared her bankruptcy petition, schedules and statement of financial affairs with the assistance of her attorney. She signed the bankruptcy schedules and statement of financial affairs under oath. The petition was filed at the end of the day on July 29, 2009. The debtor testified that the entire bankruptcy preparation process was handled on that one day.

At trial the debtor explained that she had discussed the payments to the roofing contractor with her attorney but she did not provide any explanation as to why those payments were not disclosed. When asked by the trustee about the disclosure of the payment to her mother at trial, she stated "That -I didn't know that I was supposed to disclose that...I know my ignorance is no excuse... I didn't think that counted..." The trustee completed her sentence with "as anything." She did not clarify or disagree with his addition to her sentence. The debtor testified that she did not disclose to her attorney the existence of the loan from her mother or its repayment in the course of preparation of the filings. At trial on direct examination, her attorney did not ask her any questions about the omission regarding the payment to her mother.

Following the first meeting of creditors, the trustee had requested a complete accounting of the Camaro sale proceeds from the debtor through her counsel. Based on the testimony at the creditors meeting, the trustee believed that there were additional Camaro proceeds remaining for the benefit of creditors. After letters and calls to the debtor's counsel seeking further information about these transactions, the trustee on October 2, 2009, sent a letter to Mrs. Flemings seeking a return of the $2500 as a preference and filed an objection to discharge on October 5, 2009. Not until the evening before her trial did the debtor provide a complete accounting of the loan proceeds and the Camaro sale proceeds. That accounting showed that the debtor was substantially truthful about the amount of cash she had on hand and the amount of funds that were in her checking account on the date of filing. Any

discrepancy between her schedule and her banking records appeared to be related to when checks would have cleared the bank. *Debtor's Exhibits H and I.*

While the accounting provided the detail about how the loan proceeds and the Camaro proceeds had been spent, it also the debtor's payments to creditors with whom she intended to continue doing business, and her efforts to catch up debts that she intended to reaffirm. These payments included her car payment, her cell phone bill (on which she paid two months in order to keep from being disconnected), her cable television and internet bills, and her utilities expenses. The debtor testified that she deposited some of the Camaro cash proceeds to her checking account on the day before filing to cover the Honda payment (which would be made by automatic draft on the day of her filing) because she "was going to reaffirm her car loan," and she thought she was supposed to keep making the payments. This deposit was made the day before she testified that she met with her attorney to discuss bankruptcy and prepare her schedules. Except for the creditor secured by Honda vehicle, none of these recipients of the Camaro proceeds were listed as creditors or as parties to executory contracts or leases.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

**II.     Analysis**

**A.  *Transfers made with the intent to hinder, delay or defraud creditors***

The trustee first argues that the debtor violated section 727(a)(2)(A) of the Bankruptcy Code. That section provides that:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . .

concealed, or has permitted to be . . . concealed----

(A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. 727(a)(2)(A)(2005).

"This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir. 2000)(quoting *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir. 1997)). In the case before the court there was a transfer of the debtor's property - the proceeds of the Camaro sale. The use of those funds to pay the roofing contractor and the roofing supplier was not disclosed so there was a concealment; however, the court is not convinced that the trustee has proven that the transfers of those proceeds were made with intent to hinder, delay or defraud creditors.

Under section 727(a)(2)(A), the trustee has the burden of proof to show by a preponderance of the evidence that all of the elements of his objection have been met. *Barclays/American Business Credit v. Adams (In re Adams)*, 31 F. 3d 389, 394 (6th Cir. 1992). He must prove that the debtor had actual fraudulent intent to hinder, delay and defraud her creditors. *In re Courtney*, 351 B.R.491,500 (Bankr. E.D.Tn.2006). Rarely does a debtor admit to fraudulent intent. Therefor the courts have allowed proof of intent to be established through circumstantial evidence, including providing evidence of "badges of fraud." *Id.* These badges include "(I) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question: (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of a pattern or series of

transaction or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of events and transactions under inquiry." *Id. (quoting E. Diversified Distrib.,Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672-73 (Bankr.N.D.Ga. 2004)*.*

In the case before the court, the debtor did disclose the sale of the Camaro. The sale was an arm's length transaction. The roofing contractor was a friend of her husband's but the debtor provided evidence of other bids she obtained indicating that this contractor's bid was the least expensive  contract. *Debtor's Exhibit* E. She provided detailed proof of the condition of her house and  the reason for the timing of the repairs. There does not appear to be a preponderance of the evidence that she was trying to take the proceeds from the Camaro sale and put them beyond the reach of her creditors.

To the contrary the debtor's property was transferred to pay creditors - or parties who would have been creditors in her case but for the transfers.  The timing may be suspicious but the debtor found herself in a difficult situation.  She had a deadline to make certain repairs to her home or risk losing the roof over her head.  While she may have spent the Camaro proceeds preferring one creditor over another, a preference alone does not usually give rise to a denial of discharge.  *Pohl Construction Co. v. Waddle (In re Waddle*), 29 B.R. 100, 103 (Bankr. W. D. Ky. 1983).  Her selection of the Camaro to liquidate does not indicate bad faith. She selected the only asset of sufficient value she owned to fund the needed repairs.  In this instance, the court finds that the Trustee did not prove by a preponderance of the evidence that the debtor's intent in making the transfers to the roofing contractor, repaying her mother and other creditors was intended to hinder, delay or defraud her creditors.

### B.  *Knowing and fraudulent false oath*

As an additional, or alternative, basis for denial of discharge the trustee contends that the debtor knowingly and fraudulently made a false oath in connection with the case.  11 U.S.C.

§ 727(a)(4). He specifically alleges that (a) the debtor failed to list a payment of $2500 to her mother in her statement of financial affairs and (b) she misrepresented the amount of cash and roofing materials she had on hand on the date of the filing. Based on her testimony at the first meeting of creditors that the roofing job on her home was not completed until after the bankruptcy was filed, the trustee believed that she had cash on hand to pay the roofing contractor and materials in her possession that had not yet been used. [2]

"A false oath may involve a false statement or omissions from the debtor's schedules." *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174,178 (5th Cir.1992). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Abbey v. Retz (In re Abbey),*364 B.R. 742, 759 (Bankr.D. Montana 2007)(quoting *Aubrey v. Thomas (In re Aubrey),*111 B.R.268,274(9th Cir. B.A.P.1990))  "[T]he opportunity to obtain a fresh start is . . . conditioned upon truthful disclosure." *Id.* The Sixth Circuit has stated that "Complete financial disclosure is a prerequisite to the privilege of discharge." *In re Keeney,* 227 F.3d at 685.

The five elements which the trustee must prove are listed by the Sixth Circuit in the *Keeney* decision:

> In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987).

---

[2] There was also an allegation in the trustee's trial brief that the debtor had misstated her ownership interest in her house and its value. The trustee admitted at trial that he was mistaken about the debtor's husband having an interest in the house and the value of the house being $51,000. The court finds that the debtor accurately described her interest and the value of the house and that the value of the house and the trustee's allegations are irrelevant to the analysis of whether the debtor made a false oath relating to the payment to her mother or her disclosure of cash and roofing materials on hand at filing.

*Keeney,* 227 F.3d at 685-86.

Based upon the evidence presented at trial, the first two elements have been established for the loan repayment omission but not for the statements about the cash and roofing materials on hand at filing. Question 3© of the statement of financial affairs asks the debtor to list all payments made within one year immediately preceding the commencement of the case to or for the benefit of creditors who were insiders. The debtor's response was "None" to this question. Two days before filing she had paid her mother $2500 in cash. *Debtor's Exhibit H and I.* That statement was false.

With respect to the allegation regarding the amount of cash and roofing materials on hand at filing, the proof at trial showed that the debtor had, in fact, spent all of the cash from the loan and the Camaro sale prior to, or on the day of, her filing. It also appeared that the roofing job was completed on the day of her filing and all of the materials were incorporated into her home by the time she filed. Therefore, the statements by the debtor related to cash on hand, her bank balances, and the roofing materials were not false.

However, in the course of justifying her statements about the cash and roofing materials, the debtor disclosed three payments to creditors which should have been listed in the responses to her statement of financial affairs. Like Question 3.c., Question 3.a. asks for a list of payments to creditors. The question asks for information about all payments in excess of $600 made within the 90 days prior to filing. This question, like 3.c., is designed to help a trustee discover avoidable transfers. It does not ask the debtor to determine what transfers are avoidable and then list only avoidable transfers; it asks for the name and address of the creditor, the date and the amount paid, and the amount remaining owing of all creditors. It is up to the trustee to determine what payments he does or does not want to pursue. In this case, the debtor omitted a $1000 cash payment to the roofing contractor and two payments exceeding $600 to the roofing supplier totaling $1584.23. *Debtor's Exhibit* I.

The trustee did not allege the omissions from the response to Question 3.a. as additional false oaths in his complaint. There is some question whether the trustee even knew about these transfers until the day of the trial. Because these omissions were not alleged, the court will not rely on them as additional false oaths which, on their own, might justify a denial of the debtor's discharge, but the court does find that the omissions provide circumstantial evidence of the debtor's knowledge and intent.  For example, the debtor discussed at least the payment to the roofing contractor with her attorney before filing. She mentioned the payments generally but was mistaken about the timing at her first meeting of creditors. She relied on the fact that she made these payments prepetition in her answer (without mentioning the specific amounts) as the defense to the trustee's allegation of misstating cash on hand. All of these facts are part of the record and will be considered in the context of the review of the remaining elements of the trustee's allegation related to her false statement about the repayment to her mother.

The third element cited in *Keeney* involves the debtor's knowledge. The debtor did not admit that she knew her response was false. It is the trustee's burden to prove that the false statements were made knowingly.  "Knowledge that a statement is false can be evidenced by a demonstration that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *Gordon v. Courtney (In re Courtney),* 351 B.R. 491, 506 (Bankr.E.D. Tenn. 2006)(citations omitted). Knowledge and intent may be demonstrated by circumstantial evidence. *Id.*  The trustee has strong circumstantial evidence that the debtor knew that the statement was false. The Debtor is a finance manager. She provided a copy of her own checkbook register showing careful accounting of her transactions. *Debtor's Exhibit* H. She produced the cash tickets and invoices from the supplier. *Debtor's Exhibit* E.  She was able to reconstruct the payments down to the penny for trial. She discussed the payments to the roofing contractor with her attorney while preparing the schedules, but not the payment to her mother. She repaid her mother in cash on the night she sold her car. She did not claim that she was

rushed to file or that the omission was a mistake. She did not claim that she forgot about the transfer. She was carefully rationing her cash proceeds up to the day she filed and even planning in advance for electronic deductions from her bank account to insure that she paid what she wanted to. Despite having all the information available to list the largest payment she made to a creditor during the week before her filing, she swore that there were "none." From the surrounding circumstances, the court finds that she knew that she had paid her mother, an insider, within a year of her filing and that it should have been listed on the schedule. The trustee has met his burden with respect to the first three elements required by *Keeney*.

The fourth element is fraudulent intent. "Fraudulent intent involves a material representation that [the debtor knows] to be false, or ... an omission that [the debtor knows] will create an erroneous impression." *Gordon v. Courtney (In re Courtney),* 351 B.R. 491, 506 (Bankr.E.D.Tenn. 2006)(citations omitted)." The Court of Appeals for the Seventh Circuit has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* " ' [C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson*, 828 F.2d at 252 (citation omitted). "However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence." *In re Keeney* at 685.

The omission of all transfers to creditors in the statement of financial affairs leaves a trustee with the impression that there are no avoidance actions to investigate, and if appropriate, pursue. Here the trustee has strong circumstantial evidence that the debtor had the requisite intent. The party who received the transfer which she omitted was her mother. The transfer was all in cash. The mother-daughter relationship, the debtor's serious financial condition, her mother's limited financial resources, the debtor's course of conduct after the onset of financial

difficulties in picking and choosing which creditors would be paid and which discharged, the omission of the loan payment and the proximity of the payment to the filing are all badges of fraud. *Id.* The evidence surrounding the debtor's omission demonstrates fraudulent intent.

If the trustee meets his burden of proof on the issue of intent, the burden shifts to the debtor to rebut the presumption. *Id.* In this case, the debtor's counsel argued at trial that her admissions at the creditors' meeting should ameliorate the false response in her statement of financial affairs and negate any fraudulent intent. *Pohl Constr. Co. v. Waddle (In re Waddle)*, 29 B.R.100, 103 (Bankr.W.D.Ky. 1983)("A debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property of the estate from his creditors.")(*criticized in Buckeye Retirement Co., LLC, Ltd. v. Swegan (In re Swegan)*, 383 B.R. 646, 657, n.8 (6th Cir. B.A.P.2008)) The court recognizes that debtors who mistakenly or inadvertently give false information and who seek to amend their schedules or report omissions prior to or during the meeting of creditors are not perceived as possessing the requisite intent. *Keeney,* 227 F.3d at 686.  On the other hand, debtors who disclose only when confronted by the trustee may be found to possess that intent.  *Courtney,* at 506.

The debtor has never claimed that the omission was the result of mistake or inadvertence, other than her comment at trial that she did not think that the transfer to her mother "counted." The debtor did not claim mistake at the meeting of creditors. She showed no confusion about whether she was repaying a loan to her mother when confronted by the trustee about where she deposited the proceeds of the Camaro sales. Since then she has not tried to make a correction in the same way she so clearly did when she corrected the date of the payments to the roofing contractor at trial.

Further, the testimony at the creditors meeting which debtor's counsel argued should negate the false statements was not made as a pre-emptive correction of an inadvertent omission. It was a response under oath to direct questioning by the trustee.  The debtor's

disclosures came when she was faced with telling the truth or making additional false oaths. The information about the timing of the repayment to her mother was only disclosed when the trustee asked about whether Mrs. Flemings was listed as a creditor when he followed up on the issue of the proceeds of the Camaro sale.  The debtor's first responses at the creditors meeting left the trustee with the impression that she had only failed to list a creditor.

Another example of conduct contradictory to her claim of no fraudulent intent is her failure to amend her schedules to accurately reflect her preptition payments to creditors. The failure to amend schedules has been characterized as "reckless indifference to the truth which is considered the equivalent of fraud." *In re Courtney* at 506; *Friedman v. Sofro ( In re Sofro)*, 110 B.R.989, 991 (Bankr.S.D.Fla. 1990) She did not provide the full accounting of the sale proceeds and loan proceeds until the eve of trial and she did not amend the statement of financial affairs to include those additional transfers that her accounting disclosed.

Finally, at trial the debtor offered no proof in her direct testimony on the reason for her failure to disclose the payment.   Again, it was the trustee who sought an explanation. The court does not find her response that she did not think the transfer "counted" credible. This transfer was the largest payment she made in the week before filing. It involved a loan from her mother who testified about her own limited financial resources. It was a repayment in cash within the week before she filed bankruptcy while she was getting her finances in order to file bankruptcy. The court finds her response on cross-examination inadequate and her efforts after being "found out" insufficient to rebut the presumption of fraudulent intent.

The court finds that the last element regarding materiality has also been met by the trustee. " The subject of a false oath is material if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Keeney at 686 (quoting Beaubouef*, 966 F.2d at 178 (citation omitted)). Materiality does not mean that a significant amount of money is involved;

only that the subject matter of the false oath bears a relationship to the bankrupt's estate or concerns the discovery of assets, business dealings, or the existence or disposition of property. *Keeney* at 686. The concealment of a potential preference action clearly bears a relationship to the bankrupt's estate. " If the omission interferes with the possibility of a preference or fraudulent conveyance action the omission may be considered material."*See Abbey v. Retz, (In re Retz)*, 364 B.R.742, 759 *(quoting Fogal Legware of Switz, Inc. v. Wills (In re Wills,* 243 B.R. 58, 63 (9th Cir. B.A.P. 1999) and *Collier on Bankruptcy* ¶ 727.04[1][b]). The debtor's failure to list the payment to her mother was a material omission.

      The debtor argues that "[o]nly the most draconian reading of the bankruptcy code or the facts of this case justify a denial of this Debtor's discharge." *Debtor's Trial Brief* at 5. The court acknowledges that the transfer omitted is only $2,500[3] but the court also notes that the debtor is seeking to discharge only $25,000 of her debt. One treatise has discussed that the false oath must relate to a material matter and that the failure to list assets that are of minimal value may not be a proper basis for a discharge. *Norton's Bankruptcy Law and Practice 2d* §74:11. However, the court also notes that substantially more courts have held that false oaths concerning minimal or even worthless assets constitute material omissions that can preclude discharge. *See, e.g., Swicegood v. Ginn*, 924 F.2d 230 (11th Cir. 1991) (failure to disclose a Rolex watch, silver flatware, two shares of At&t stock, golf clubs and two demitasse sterling silver cups resulted in denial of discharge for false oath; value of assets was $12,700 and represented approximately 1.5% of the debt seeking to be discharged); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir. 1987)( false oath related to a failure to list a bank account and the omission of a $15,000 transfer in the statement of financial affairs); *Norton's Bankruptcy Law and Practice 2d* §74:11 at n. 3,4 and 5.

      As a policy matter, the trustee and the creditors should be able to rely on accurate

---

[3] The transfers omitted from Question 3(a) would bring the total up to $5084.

schedules and a complete statement of financial affairs; and as previously noted, that is the fundamental purpose of section 727(a)(4)(A). The debtor argued at trial that the trustee had not pursued additional discovery through depositions in order to discover how the debtor had spent the cash from her mother's loan and the Camaro sale. The fact that the Trustee could have conducted additional discovery to discover what happened to the proceeds does not mitigate her failure to disclose her financial affairs so that the trustee would not need to engage in such discovery. As observed by one court, "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). Had the debtor provided accurate information in her statement of financial affairs before filing, or promptly corrected her responses after filing, she would not be facing the potential loss of her discharge. She decided, without discussion with her counsel, that the payment to her mother would not "count."

> The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. *Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330, 1330 (2d Cir. 1969). It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2nd Cir. 1945). *See Duggins v. Heffron*, 128 F.2d 546, 549 (9th Cir. 1942). The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act. *Diorio*, 407 F.2d at 1331.

*Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

In this case, the debtor knowingly and fraudulently made a false oath in connection with her case when swore that there were no payments to insiders within the one year period before her filing. Neither her belated responses to the trustee's questions at the creditors meeting nor the accounting provided at trial (which disclosed additional errors in the statement) mitigates her intention to make a false oath. Accordingly, the discharge of the debtor is denied under 11

U.S.C. § 727(a)(4)(A) and a judgment consistent with this memorandum will be entered.

The foregoing memorandum constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

# # #